UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

| | |
|---|---|
| EDWARD ZIMBELMAN,<br><br>  Plaintiff,<br><br>v.<br><br>SOUTHERN NEVADA REGIONAL HOUSING AUTHORITY, and, JOHN HILL, in his official capacity,<br><br>  Defendants. | Case No. 2:13-cv-02143-APG-VCF<br><br>**ORDER ON MOTIONS FOR SUMMARY JUDGMENT**<br><br>(Dkt. ##29, 31) |

Plaintiff Edward Zimbelman applied for housing from defendants Southern Nevada Regional Housing Authority and John Hill (the "Housing Authority"). When he filled out the Housing Authority's application, Zimbelman noted he was a registered sex offender. Although the Housing Authority does not permit registered sex offenders into its housing program, it admitted Zimbelman.

After he had lived in his home for seven months, the Housing Authority sent Zimbelman a notice that he was being terminated from the housing program because he was a registered sex offender. Zimbelman filed this suit claiming the Housing Authority cannot terminate him.

He now moves for summary judgment, arguing the Housing Authority waived or is estopped from using the termination clause in his lease, and that the due process clause also prevents the Housing Authority from terminating him. The Housing Authority cross-moves for summary judgment, arguing Zimbelman cannot prove his claims.

The Housing Authority did not waive and is not estopped from terminating Zimbelman. And to the extent Zimbelman has a due process right to challenge the Housing Authority's

decision, he cannot show it was wrong to terminate him. I thus deny Zimbelman's motion and grant summary judgment in favor of the Housing Authority.

## I.    BACKGROUND

The parties generally agree on the facts. Zimbelman applied for a home with the Housing Authority. He disclosed in his application that he was a registered sex offender. Apparently, the Housing Authority did not read his application carefully, if at all; instead, it relied on a preliminary background check to accept Zimbelman into the program.

Zimbelman's lease states that the Housing Authority "may terminate this lease agreement if . . . [a] household member . . . is found to have: a prior or current conviction for a sexual criminal offense that is subject to the Nevada Offender Registration Program."[1] The lease further states that "failure of [the Housing Authority] to insist upon the strict performance by the Tenant of the terms . . . and conditions contained in this Lease . . . shall not constitute . . . a waiver or relinquishment" of the Housing Authority's rights.[2] The lease also states that a waiver of the Housing Authority's rights is not effective unless it is in writing and signed by the Housing Authority.[3]

Zimbelman signed the lease and moved into his home, where he lived for about seven months. Later, Zimbelman received a notice from the Housing Authority telling him that he was being evicted because he was a registered sex offender. He was understandably surprised; after all, he had explicitly disclosed in his application that he was a sex offender. But the Housing Authority apparently realized Zimbelman was a registered sex offender only after it received Zimbelman's records from the Las Vegas Metropolitan Police Department.

The Housing Authority gave Zimbelman an informal hearing on his termination. After termination was upheld, the Housing Authority gave Zimbelman a formal hearing. The Housing

---

[1] (Dkt. #29-1 at 26.)
[2] (*Id.* at 42.)
[3] *Id.*

Authority provided Zimbelman with a written denial shortly after, explaining he was being terminated based on 24 CFR 966, the Housing Authority's policies, and PIH Notice 2012-28 (which is a policy document created by the department of Housing and Urban Development ("HUD")).[4]

## II. LEGAL STANDARDS

### A. Summary Judgment

Summary judgment is appropriate when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law."[5] For summary judgment purposes, the court views all facts and draws all inferences in the light most favorable to the nonmoving party.[6]

If the moving party demonstrates the absence of any genuine issue of material fact, the burden shifts to the nonmoving party to "set forth specific facts showing that there is a genuine issue for trial."[7] The nonmoving party "must do more than simply show that there is some metaphysical doubt as to the material facts."[8] It "must produce specific evidence, through affidavits or admissible discovery material, to show" a sufficient evidentiary basis on which a reasonable fact finder could find in its favor.[9]

A party must support or refute the assertion of a fact with admissible evidence.[10] As the summary judgment procedure is the pretrial functional equivalent of a directed-verdict motion, it

---

[4] (Dkt. #31 at 34.)

[5] *Celotex Corp. v. Catrett*, 477 U.S. 317, 330 (1986) (citing Fed. R. Civ. P. 56(c)).

[6] *Kaiser Cement Corp. v. Fishbach & Moore, Inc.*, 793 F.2d 1100, 1103 (9th Cir. 1986).

[7] *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 256 (1986); *Celotex*, 477 U.S. at 323.

[8] *Bank of Am. v. Orr*, 285 F.3d 764, 783 (9th Cir. 2002) (internal citations omitted).

[9] *Bhan v. NME Hosps.*, Inc., 929 F.2d 1404, 1409 (9th Cir. 1991); *Anderson*, 477 U.S. at 248–49.

[10] Fed. R. Civ. Proc. 56(c)(1); *Orr*, 285 F.3d at 773; *Harris v. Graham Enterprises, Inc.*, 2009 WL 648899, at *2 (D. Ariz. Mar. 10, 2009).

requires consideration of the same caliber of evidence that would be admitted at trial.[11] Thus, it is insufficient for a litigant to merely attach a document to a summary judgment motion or opposition without affirmatively demonstrating its authenticity.

### III. DISCUSSION

The parties' motions for summary judgment address two disputes: (1) whether the lease allowed the Housing Authority to terminate Zimbelman and (2) whether the Housing Authority violated Zimbelman's due process rights by terminating him.

#### A. Whether the Housing Authority can terminate Zimbelman under the lease

The parties apparently agree that, under Section 3 of the lease, the Housing Authority could have initially terminated Zimbelman based on his registration status. Section 3 states the Housing Authority may terminate the lease if the tenant is a registered sex offender. But Zimbelman argues the Housing Authority either waived its rights to enforce this termination provision or is estopped from enforcing it.

##### i. Estoppel

Equitable estoppel consists of the following elements: (1) the party to be estopped must be apprised of the true facts, (2) that party must intend that his conduct shall be acted upon or must so act that the party asserting estoppel has the right to believe it was so intended, (3) the party asserting estoppel must be ignorant of the true state of the facts, and (4) the party asserting estoppel must have detrimentally relied on the other party's conduct.[12]

Zimbelman has failed to satisfy his initial burden to establish several of the estoppel elements. First, he provides no evidence or explanation about how he justifiably relied to his detriment on the Housing Authority's agreement to lease him his house. For instance, he has not proven that he lost another housing opportunity as a result of the Housing Authority's delay in seeking to evict him.

---

[11] *Anderson*, 477 U.S. at 251 (citing *Bill Johnson's Restaurants, Inc. v. NLRB*, 461 U.S. 731, 745 n.11 (1983)).

[12] *Las Vegas Convention & Visitor Auth. v. Miller*, 124 Nev. 669, 698 (Nev. 2008).

Next, he has not proven that he reasonably believed the Housing Authority intended not to enforce the termination provision. The Housing Authority specifically reserved its right to enforce the lease terms even if it did not enforce them at the outset. No lease term required the Housing Authority to enforce the termination provision at any specific time. Zimbelman points to no representations the Housing Authority made that could have reasonably led him to believe the Housing Authority gave up its right to terminate.

And Zimbelman provides no evidence he was ignorant of the fact that the Housing Authority might later terminate him because of his registration status. This is especially true because the terms of the lease put him on notice that his registration was a potential ground for termination and that the Housing Authority reserved the right to enforce the termination provision later.

Zimbelman primarily relies on *Merrill v. DeMott* for his estoppel argument.[13] In *Merrill*, the Nevada Supreme Court held that a tenant was estopped from invalidating a lease. In finding estoppel, the Court pointed out that the landlord had detrimentally relied on the lease's existence: he took the property off the market and leased a parking lot for the tenant. Zimbelman has made no similar showing here. *Merrill* is also distinguishable in that it does not address whether a landlord is estopped from enforcing a termination provision because of a continuing breach.

I therefore find that Zimbelman has failed to prove the Housing Authority is estopped from enforcing the termination provision.

          *ii.*      *Waiver*

Zimbelman next argues the Housing Authority waived its right to enforce the termination provision by waiting seven months to enforce it. But Zimbelman's lease contained a non-waiver clause stating that the Housing Authority's failure to enforce:

> the terms, covenants, obligations, agreements, and conditions contained in this Lease, or any of them, shall not constitute or be construed as a waiver or relinquishment of [the Housing Authority]'s

---

[13] 113 Nev. 1390, 1396 (1997).

right thereafter, at any time or in any manner, to enforce any such terms, covenants, obligations, agreements, or conditions.[14]

The lease also requires that any waiver be in writing and signed by the Housing Authority.[15]

Zimbelman argues the non-waiver clause should be unenforceable because the Housing Authority negligently failed to read Zimbelman's application and waited several months before evicting him. He cites to *Consumers Distribution Company v. Hermann*[16] and *Summa Corporation v. Richardson*.[17] These cases stand for the proposition that "parties may not sit on their rights forever" and that non-waiver clauses "retain their force and effect for only a reasonable amount of time."

In *Consumers*, the Nevada Supreme Court noted that non-waiver clauses are "generally enforceable." It went on to hold that a landlord's five-year delay in demanding a lease penalty was so unreasonable that the non-waiver clause in the lease should be ignored. *Summa Corporation* stands for a similar proposition that, in certain extreme cases of delay, a landlord might not be able to enforce a non-waiver provision to recover for past breaches of a lease. It does not address whether a non-waiver clause is enforceable where a tenant continues to be in breach of the lease. In fact, cases it cites to distinguish between past and current breaches, noting that ongoing breaches would not be waived if the lease has a non-waiver clause.

Zimbelman concedes the Nevada Supreme Court has not addressed whether a non-waiver clause should be rendered unenforceable because a landlord signs a lease knowing a ground for termination might exist. He argues I should adopt a rule that renders non-waiver clauses unenforceable anytime a landlord does so. Zimbelman also argues that, like the landlord in *Consumers*, the Housing Authority has waited an unreasonable time to enforce the termination provision.

---

[14] (Dkt. #29-1 at 42.)
[15] (*Id.*)
[16] 107 Nev. 387, 394 (1991).
[17] 93 Nev. 228, 234 (1977).

Page 6 of 10

As noted in *Consumers*, non-waiver clauses are generally enforceable. The Housing Authority had the contractual right to terminate Zimbelman for his registration status, and it specifically reserved the right to delay in terminating him. The lease informed Zimbelman that even if the Housing Authority did not immediately enforce a termination provision against him, it may do so later. Indeed, the non-waiver clause was likely meant to address this very situation: the Housing Authority electing to take additional time to process an applicant's records and decide whether to keep him in the tenancy. Zimbelman has not raised a triable issue as to whether the waiver clause is enforceable.

Finally, Zimbelman argues that public policy favors punishing the Housing Authority because it negligently failed to determine Zimbelman's registration status earlier. It may be true that the Housing Authority did not read Zimbelman's application—indeed it may not read any of the applications it receives, opting instead to rely on its own background checks. But there are equally important policies in favor of giving the Housing Authority the ability to adequately research applicants and take additional time to determine whether it should exercise a termination provision. If the Housing Authority automatically waives all existing grounds for termination with no room for error, it would presumably err on the side of refusing to provide shelter to its low-income applicants. Zimbelman asks me to punish the Housing Authority for providing him low-income housing for seven months, even though he never qualified for that housing under HUD's regulations.

### B. Whether the Housing Authority violated Zimbelman's due process rights.

Having found that Zimbelman cannot challenge the termination under his lease, the only remaining issue is whether he has some non-contractual grounds to challenge the termination. The only other ground Zimbelman identifies is a potential due process violation.

Zimbelman likely has procedural due process rights to his housing.[18] But procedural due

---

[18] *Nozzi v. Hous. Auth. of City of Los Angeles*, 425 F. App'x 539, 541 (9th Cir. 2011) ("[C]ontrolling authority establishes that Section 8 participants have a property interest in housing benefits.").

process gives Zimbelman only a right to adequate process of his claims with the Housing Authority—and Zimbelman fails to explain how he received inadequate process.[19] The Housing Authority explained the reasons for its termination and gave Zimbelman multiple opportunities to challenge its decision. Zimbelman fails to provide any authority or analysis suggesting that he was not afforded sufficient process within the meaning of the Fourteenth Amendment.[20]

Even assuming Zimbelman has the right to challenge the Housing Authority's substantive decision, he still loses. First, 24 CFR 966.4 allows the Housing Authority to terminate Zimbelman for good cause, and Zimbelman provides no reason to believe violation of his lease is not good cause under this regulation.[21] Further, HUD has issued a policy statement reflecting its interpretation of the statutes governing public housing authority terminations. And HUD has concluded that public housing authorities must terminate a sex offender registrant who is mistakenly admitted into a housing program.[22] This is additional good cause for the Housing Authority to terminate Zimbelman.

Zimbelman argues I should give "no deference" to HUD's interpretation because it is contained in a mere policy document. But the Ninth Circuit has repeatedly instructed that an agency's reasonable interpretations should be respected—even where embodied in a policy document.[23] This is because "[a]gencies have a unique understanding of the statutes they

---

[19] *See id.*

[20] *See* L.R. 7.

[21] The parties dispute, at length, whether the Housing Authority can utilize the lease's enumerated examples of "good cause," which include: "discovery after admission of facts that made tenant ineligible." Zimbelman argues the Housing Authority is charged with knowledge of his registrant status so cannot claim it learned of it after admission. But Zimbelman ignores that 24 CFR 966.4 provides only a non-exclusive list of examples of good cause, stating that the examples "include but are not limited to" the enumerated situations. Zimbelman provides no authority indicating that public housing authorities are restricted to terminating based on enumerated examples of good cause.

[22] PIH Notice 2012-28, *available at*, http://portal.hud.gov/hudportal/documents/huddoc?id=pih2012-28.pdf.

[23] *Barrientos v. 1801-1825 Morton LLC*, 583 F.3d 1197, 1214 (9th Cir. 2009) ("The position of the United States is entitled to deference, as is HUD's most recent guidance

administer and an attendant ability to make informed determinations" about them.[24] Agency interpretations are entitled to further deference when they are interpreting their own regulations, as is the case here.[25]

Zimbelman points to a handful of courts—outside of this jurisdiction—who disagree with HUD's policy statement.[26] These courts point out that sex offender registration is listed in 42 U.S.C. §13663 as a ground for refusing entry into the housing program, but not as a ground for termination under §13662. These courts conclude that Congress must have intended to prohibit housing authorities from terminating based on registrant status.

The cases cited by Zimbelman are not binding, and I do not find them persuasive.[27] Under the scheme Congress created, registered sex offenders could never make it into the housing program because §13663 prohibits their admission. Congress presumably would have no reason to include a termination provision to address existing sex offender registrants who were never supposed to be in the program in the first place.

HUD's interpretation of §13663 is a reasonable one. Zimbelman concedes Congress intended to prohibit lifetime sex offender registrants from being in this public housing program—indeed, Congress passed 42 U.S.C. §13663 to prohibit sex offender registrants in housing

---

document."); *Park Vill. Apartment Tenants Ass'n v. Mortimer Howard Trust*, 636 F.3d 1150, 1157 (9th Cir. 2011) ("The [HUD] Guide is an agency interpretation not entitled to *Chevron* deference, but it is nevertheless entitled to a measure of respect.").

[24] *Barrientos*, 583 F.3d at 1214.

[25] *Auer v. Robbins*, 519 U.S. 452, 461, 117 S. Ct. 905, 137 L.Ed.2d 79 (1997) (deferring to the agency's position unless it is "plainly erroneous or inconsistent with the regulation") (internal quotation marks omitted). HUD's policy statement interprets a trio of CFRs. *See* PIH Notice 2012-28.

[26] *See, e.g., Miller v. McCormick*, 605 F.Supp.2d 296, 308 (D. Me.2009); *Perkins-Bey v. Hous. Auth. of St. Louis Cnty.*, No. 4:11CV310 JCH, 2011 WL 939292, at *3 (E.D. Mo. Mar. 14, 2011).

[27] The parties dispute at length whether Zimbelman's cases are relevant. The Housing Authority argues it relies on 24 CFR §996.4 and PIH Notice 2012-28, so Zimbelman's cases addressing 42 U.S.C. §§ 13662, 13663 are irrelevant. But PIH Notice 2012-28 is an interpretation of § 13663.

programs. It would be absurd to conclude Congress intended to prohibit terminating a lifetime sex offender registrant who mistakenly made it into the system.[28]

Ultimately, HUD regulations allow public housing authorities to terminate residents for good cause. HUD has instructed housing authorities to terminate registered sex offenders if they are mistakenly let into the program. HUD's interpretation of its authority is a reasonable one. Assuming Zimbelman has a due process right to challenge the substance of the Housing Authority's decision, he is not entitled to relief.

The Housing Authority had a legal and legitimate basis to terminate Zimbelman's lease based on his sex offender registrant status. Because Zimbelman cannot prevail on his claim under either a contract or due process theory, I grant the Housing Authority's motion for summary judgment.

## IV.     CONCLUSION

IT IS THEREFORE ORDERED that plaintiff's motion for summary judgment (Dkt. #29) is DENIED.

IT IS FURTHER ORDERED that the defendant's motion for summary judgment (Dkt. #31) is GRANTED. Judgment is entered in favor of the defendants.

DATED this 2nd day of June, 2015.

_____
ANDREW P. GORDON
UNITED STATES DISTRICT JUDGE

---

[28] The parties dispute whether the Housing Authority relied on 42 U.S.C. §13663 to terminate Zimbelman. HUD's policy statement appears to relate to this section, so in relying on the policy statement, the Housing Authority impliedly relied on §13663. See 64 FR 40262 (explaining that the regulations relied on in the HUD's policy statement are related to §13663). Nevertheless, I find HUD's interpretation of §13663 reasonable.